1    Thomas E. Hogan (*pro hac vice*)
   *thogan@bakerlaw.com*
2    **BAKER & HOSTETLER LLP**
   1050 Connecticut Avenue, N.W.
3    Suite 1100
   Washington, DC 20036-5403
4    Telephone: 202.861.1500
   Facsimile: 202.861.1783
5

6    Bridget S. McCabe (SBN 272545)
   *bmccabe@bakerlaw.com*
   Dyanne J. Cho (SBN 306190)
7    *dcho@bakerlaw.com*
   **BAKER & HOSTETLER LLP**
8    11601 Wilshire Boulevard
   Suite 1400
9    Los Angeles, CA 90025-0509
   Telephone: 310.820.8800
10    Facsimile: 310.820.8859

11    Attorneys for Defendant
   SCA PHARMACEUTICALS, LLC
12

13

14         **IN THE UNITED STATES DISTRICT COURT**

        **CENTRAL DISTRICT OF CALIFORNIA**
15

16

17    NEXUS PHARMACEUTICALS, INC.,   |   Case No.: 2:20-cv-07520-CJC-JDE

         Plaintiff,   |   Hon. Cormac J. Carney
18

19        v.   |   **DEFENDANT SCA PHARMACEUTICALS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

20    SCA PHARMACEUTICALS, LLC,

         Defendant.
21

22

23   |   [*Filed concurrently with Request for Judicial Notice; Declaration of Dyanne J. Cho; [Proposed] Order*]
24

25   |   **Hearing**
   Date:      November 16, 2020
26    Time:      1:30 p.m.
   Place:      Courtroom 9B
27

28   |   Action Filed: August 19, 2020

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT AND TO PLAINTIFF NEXUS PHARMACEUTICALS, INC. AND TO ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 16, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California located at 411 West Fourth Street, Santa Ana, CA 92701, Courtroom 9B, Defendant SCA Pharmaceuticals, LLC ("SCA") will, and hereby does, move the Court, under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff Nexus Pharmaceutical, Inc.'s ("Plaintiff") First Amended Complaint, ECF No. 19.

This Motion is made on the ground that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's First Amended Complaint should be dismissed with prejudice on preemption grounds because all four causes of action are anchored on violations of a federal statute that lacks a private right of action. In the alternative, because the resolution of this case requires the technical expertise of the Food and Drug Administration ("FDA"), the Court should invoke the primary jurisdiction doctrine and either dismiss or stay the case. In addition, Plaintiff's claims under California and Florida law cannot proceed where, as here, the plaintiff and defendant are both non-residents of those states because Plaintiff failed to allege the type of in-state facts sufficient to allow extraterritorial application of those statutes.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, all pleadings on file in this action, and such oral argument as may be presented at or before the time of hearing on this Motion.

This Motion is also made following the conference of counsel pursuant to C.D. Cal. L.R. 7-3, which took place on Tuesday, October 6, 2020, via telephone.

1    Counsel were unable to reach a resolution that would have made this Motion

2    unnecessary.

3

4    Dated:  October 15, 2020          **BAKER & HOSTETLER LLP**

5
                                       By:    */s/ Bridget S. McCabe*
6                                             Thomas E. Hogan (*pro hac vice*)
                                              Bridget S. McCabe
7                                             Dyanne J. Cho

8                                      *Attorneys for Defendant*
                                       SCA PHARMACEUTICALS, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

# <u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................. 1

II.   Background of Section 503B Compounding ................................... 3

III.  Nexus's Allegations ..................................................................... 6

IV.   Legal Standard .............................................................................. 8

V.    Argument ....................................................................................... 9

      A.    Nexus's Causes of Action Must Be Dismissed With Prejudice On Preemption Grounds Because They Depend On the FDCA ................ 9

      B.    Nexus's Claims Fall Squarely Within FDA's Primary Jurisdiction and the Court Should Dismiss Them or Stay the Case ...................... 17

      C.    Nexus's California Claim Fails Because The UCL Does Not Apply Extraterritorially ................................................................................ 21

      D.    Nexus's Florida Claim Fails Because the FDUTPA Does Not Apply Extraterritorially ........................................................................ 24

VI.   Conclusion .................................................................................... 25

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan USA Inc. v. Imprimis Pharms., Inc*.,
 2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ............................... 13, 14, 15, 21

*Allergan USA Inc. v. Imprimis Pharms., Inc*.,
 2018 WL 5919210 (C.D. Cal. Apr. 30, 2018) .................................................... 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................ 9

*Astiana v. Hain Celestial Grp., Inc*.,
 783 F.3d 753 (9th Cir. 2015) ............................................................................ 17

*Balistreri v. Pacifica Police Dep't*,
 901 F.2d 696 (9th Cir. 1990) .............................................................................. 8

*Bank of Am., N.A. v. Zaskey*,
 2016 WL 2897410 (S.D. Fla. May 18, 2016) .................................................... 24

*Beckington v. Am. Airlines, Inc.*,
 926 F.3d 595 (9th Cir. 2019) .............................................................................. 9

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
 353 F. Supp. 3d 1070 (D. Colo. 2018) .............................................................. 25

*Borchenko v. L'Oreal USA, Inc.*,
 389 F. Supp. 3d 769 (C.D. Cal. 2019) ................................................... 10, 11, 12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
 531 U.S. 341 (2001) .................................................................................... 11, 13

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
 169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............................................................ 23

*Clark v. Time Warner Cable*,
 523 F.3d 1110 (9th Cir. 2008) ................................................................ 18, 20, 21

*Clayworth v. Pfizer, Inc.*,
 49 Cal.4th 758 (2010) ....................................................................................... 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

*Diamond Multimedia Sys., Inc. v. Sup. Ct.*,
   19 Cal.4th 1036 (1999) ................................................................................ 21

*FBME Bank Ltd. v. Lew*,
   142 F. Supp. 3d 70 (D.D.C. 2015) ............................................................. 16

*Fund For Animals v. Mainella*,
   335 F. Supp. 2d 19 (D.D.C. 2004) ............................................................. 16

*Funke v. Sorin Group USA, Inc.*,
   147 F. Supp. 3d 1017 (C.D. Cal. 2015) .............................................. 16, 17

*Goldsmith v. Allergan, Inc.*,
   2011 WL 147714 (C.D. Cal. Jan. 13, 2011) ............................................ 11

*Hope Medical Enterprises, Inc. v. Fagron Compounding Servs., LLC*,
   2020 WL 3803029 (C.D. Cal. Jul. 7, 2020) ............................................. 15

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ...................................................... 23

*JHP Pharms., LLC v. Hospira, Inc.*,
   52 F. Supp. 3d 992 (C.D. Cal. 2014) ........................................... 13, 14, 15

*Martin v. Texaco, Inc.*,
   602 F. Supp. 60 (N.D. Fla. 1985) ............................................................. 16

*Norwest Mortg. Inc. v. Sup. Ct.*,
   72 Cal. App. 4th 214 (1999) ..................................................................... 21

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
   165 F. Supp. 3d 937 (S.D. Cal. 2016) ...................................................... 23

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) ....................................................... 10, 11, 12

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010) .................................................................... 14

*Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO, v. Schermerhorn*,
   375 U.S. 96 (1963) .................................................................................... 10

*Saber v. JP Morgan Chase Bank, N.A.*,
   2013 WL 12124000 (C.D. Cal. Oct. 9, 2013) ............................................ 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

*Shwarz v. U.S.*,
234 F.3d 428 (9th Cir. 2000) ................................................................. 9

*Stengel v. Medtronic Inc.*,
704 F.3d 1224 (9th Cir. 2013) ............................................................. 16

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) ......................................................... 17, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................. 8

*Webb v. Carter's, Inc.*,
2009 WL 10670244 (C.D. Cal. June 23, 2009) ................................ 21, 22, 23

**Statutes**

21 U.S.C. § 337(a) ..................................................................... 10, 18, 19

21 U.S.C. § 353b ................................................................................. 18

21 U.S.C. § 353b(a) ........................................................................... 4, 5

21 U.S.C. § 353b(a)(1) .......................................................................... 4

21 U.S.C. § 353b(a)(7) .......................................................................... 4

21 U.S.C. § 353b(a)(10) ........................................................................ 4

21 U.S.C. § 353b(b) .............................................................................. 4

21 U.S.C § 353b(d) ............................................................................. 13

21 U.S.C. § 353b(d)(1) .......................................................................... 3

21 U.S.C. § 353b(d)(4)(A) .................................................................. 3, 5

21 U.S.C. § 355(a) .............................................................................. 16

Drug Quality and Security Act, Pub. L. No. 113-54, 127 Stat. 587, 587
(2013) ................................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................ 8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

**Other Authorities**

159 Cong. Rec. H5961 (daily ed. Sept. 28, 2013) ........................................... 4, 10, 19

159 Cong. Rec. S8072 (daily ed. Nov. 18, 2013) ........................................... 4, 10, 19

159 Cong. Rec. S8073 (daily ed. Nov. 18, 2013) ...................................................... 3

159 Cong. Rec. S8074 (daily ed. Nov. 18, 2013) ...................................................... 3

84 Fed. Reg. 46,014 (Sept. 3, 2019) ...................................................................... 20

FDA., *Compounded Drug Products That Are Essentially Copies of Approved Drug Products Under Section 503B of the Federal Food, Drug, and Cosmetic Act, Guidance for Industry* (Jan. 2018), ............................ 5

FDA, *Interim Policy on Compounding Using Bulk Drug Substances Under Section 503B of the Federal Food, Drug, and Cosmetic Act, Guidance for Industry* (Jan. 2017), ............................................................ 5, 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case concerns prescription drug compounding under a relatively new provision in the Federal Food Drug and Cosmetic Act ("FDCA").  The new compounding provision—referred to as Section 503B—was enacted in 2013 to provide uniform regulation and centralized oversight by the United States Food and Drug Administration ("FDA") so that patients and medical providers alike would have access to safe, reliable drugs manufactured in facilities that are subjected to the same stringent safety requirements as manufacturers of FDA-branded drugs.  It was also enacted as a course correction, to eliminate the patchwork of varied state-law standards that fell short of FDA's safety requirements, leading at times to tragic results, and to give FDA stronger teeth to consistently enforce compounding rules.

The claims that Plaintiff Nexus Pharmaceuticals, Inc. ("Nexus") asserts against SCA Pharmaceuticals, LLC ("SCA") for its ephedrine sulfate drug product[1] rise and fall on the interpretation of the FDCA, a comprehensive federal statute with no private right of action, and on various guidance documents issued by FDA.  Nexus tries an end-run around the FDCA by asserting violations of state law consumer protection statutes, but its gambit fails on preemption grounds.  No matter how Nexus dresses up its allegations, they are at their core federal infractions that Congress directed FDA to enforce.  Because Nexus's four causes of action attack conduct that is either lawful or unlawful under the FDCA and FDA's

---

[1] Nexus has also asserted nearly identical claims against five other compounders in this District, see Case Nos. 8:20-cv-01506, 2:20-cv-07328, 2:20-cv-07329, 2:20-cv-07331, and 2:20-cv-07518 (each a "Related Case"), which were deemed related only after SCA and two other compounders filed related case notices under Local Rule 83-1.3.1.  *See, e.g.*, ECF No. 12.  Because FDA has not interpreted and enforced the FDCA in the way Nexus wishes it would, Nexus has taken matters into its own hands through a myriad of state statues and six new dockets in this Court to circumvent the FDA.

1

1  policies and enforcement framework, they are preempted, and the case should be

2  dismissed with prejudice.

3        In the alternative, the Court should exercise the primary jurisdiction doctrine

4  and either dismiss the case without prejudice or stay the case while FDA finishes its

5  rulemaking and other action because adjudicating Nexus's claims requires FDA's

6  technical expertise.  And, some of the relevant issues are of first impression to

7  FDA.  FDA agrees Nexus's lawsuit is an interference.  The Court can take judicial

8  notice that on September 10, 2020, just weeks after Nexus initiated its pile of

9  lawsuits, FDA issued a notice on its website that FDA plans to issue an "upcoming

10  revision to its guidance for outsourcing facilities" that will directly impact how

11  Nexus's FDCA violations would be resolved.  *See* Ex. A to Request for Judicial

12  Notice ("RJN"), FDA Update, "FDA clarifies compounding policies" (Sept. 10,

13  2020) ("9/10/20 FDA Update"), at 2.  FDA did not stop there.  At the request of

14  counsel for one of the other compounders in Nexus's crosshairs, FDA issued a

15  declaration and wrote a letter stating that (1) FDA has never taken any action

16  against a compounder engaging in some of the actions that Nexus complains of in

17  this case; and (2) issuing such statements would "discourage an interpretation of the

18  relevant provisions" in Nexus's lawsuit "that could be potentially inconsistent with

19  FDA's interpretation and future enforcement actions."   *See* Ex. C to RJN,

20  Declaration of Maria Edisa Gozun, Acting Director of the Division of

21  Compounding Drugs at FDA ("Gozun Decl."), at ¶ 8; *id.* at ¶ 5, Ex. B (Letter dated

22  9/28/20 from M. Hendriksson to K. Palmer) ("9/28/20 Hendriksson Letter"), at 2.

23  If the Court does not find the claims are preempted, SCA requests that the Court

24  invoke the primary jurisdiction doctrine to abstain from ruling on technical issues,

25  subject to FDA's rulemaking that FDA is working on in real time.

26        Finally, Nexus's claims under California's Unfair Competition Law and the

27  Florida Deceptive and Unfair Trade Practices Act are defective on their face

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   because Nexus is not resident in either state, SCA is not resident in either state, and

2   Nexus fails to allege misconduct or injury that primarily occurred in either state.

3   **II.     BACKGROUND OF SECTION 503B COMPOUNDING**

4        In 2013, Congress enacted the Drug Quality and Security Act ("DQSA") to

5   regulate drug compounding by adding the Compounding Quality Act to the FDCA.

6   *See* Drug Quality and Security Act, Pub. L. No. 113-54, 127 Stat. 587, 587 (2013).

7   Drug compounding has a long history.  It is the custom of "combining, admixing,

8   mixing, diluting, pooling, reconstituting, or otherwise altering of a drug or bulk

9   drug substance to create a drug."  21 U.S.C. § 353b(d)(1).  Patients and medical

10  providers rely on compounding to fill a gap left by FDA-branded drugs.  As

11  Congress recognized, "[w]ithout compounders, doctors would not perform

12  surgeries.  Without compounders, oncologists would be forced to administer

13  alternative chemotherapy drugs.  Without compounders, patients would suffer from

14  limited access."  *See* Ex. D to RJN, 159 Cong. Rec. S8073 (daily ed. Nov. 18,

15  2013) (statement of Sen. Boozman).

16       Compounders like SCA provide a vital service by performing this necessary

17  service on a large scale, in state-of-the-art facilities, and under stringent

18  manufacturing criteria.  Through the DQSA (and with it, the Compounding Quality

19  Act, commonly referred to as Section 503B), Congress deliberately balanced the

20  importance of compounding to our healthcare system with the need for controls to

21  address the legacy of unregulated compounding practices.  *See* Ex. D to RJN, 159

22  Cong. Rec. S8074 (statement of Sen. Warner) (The Act "ensures that patients and

23  providers have access to safe compounded drugs.").  Section 503B created a new

24  category of drug compounders who may compound sterile drugs under certain

25  circumstances: "outsourcing facilities."[2]  Drug products compounded by an

26  ───────────────

27  [2] An outsourcing facility is a facility engaged in the compounding of sterile drugs,
    that has registered with FDA as an "outsourcing facility," and that complies with all

28  the requirements of Section 503B.  21 U.S.C. § 353b(d)(4)(A).

3

outsourcing facility are exempt from FDA's new drug application process if eleven conditions are met.  21 U.S.C. § 353b(a) ("Sections 352(f)(1), 355, and 360eee-1 [of the FDCA] shall not apply to a drug compounded … in a facility that elects to register as an outsourcing facility if each of the following conditions is met [(setting forth the eleven conditions in § 353b(a)(1)-(11))].").  Section 503B's comprehensive requirements for outsourcing facilities include registration, labeling, rigorous controls and quality standards, adverse incident reporting, and FDA inspections. 21 U.S.C. §§ 353b(a)(1), (a)(7), (a)(10), (b).

Congress enacted Section 503B to create a new, regulated pathway for large-scale compounders to operate safely, under federal FDA regulations.  *See* Ex. E to RJN, 159 Cong. Rec. H5961 (daily ed. Sept. 28, 2013) (statement of Rep. Waxman, co-sponsor) (the DQSA "give[s] hospitals and doctors the ability to access a source of compounded medicines that are made in a facility that is subject to stringent FDA quality standards and oversight").  Congress also created Section 503B to standardize the compounding regulations, so "[s]terile compounding facilities that do not want to comply with the patchwork of State laws and requirements can choose instead to have FDA regulate their compounding.  [Section] 503B establishes rigorous quality standards, registration, adverse event reporting, inspections, and fees."  *See* Ex. D to RJN, 159 Cong. Rec. S8072 (statement of Sen. Alexander, co-sponsor); *see* Ex. E to RJN, 159 Cong. Rec. H5961 (statement of Rep. Waxman, co-sponsor) ("Divergent court decisions on the underlying statute had forced the agency to cobble together a piecemeal approach to regulating compounding pharmacies that was different in some parts of the country than in others.  That untenable legal situation created loopholes that companies like NECC[, a pre-Section 503B compounding facility that produced tainted drugs in 2012, causing tragedy and prompting new legislation,] were able to exploit.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

An "outsourcing facility" may compound sterile drugs without going through the new drug application process only if it registers with FDA and complies with Section 503B. *See* 21 U.S.C. §§ 353b(a), (d)(4)(A). FDA is in the midst of a complex rulemaking process to interpret and implement Section 503B. During this ongoing process, FDA has developed a guidance document and an interim policy relevant to this dispute: (1) FDA., *Compounded Drug Products That Are Essentially Copies of Approved Drug Products Under Section 503B of the Federal Food, Drug, and Cosmetic Act, Guidance for Industry* (Jan. 2018), *available at* https://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformatio n/Guidances/UCM510153.pdf (last visited Oct. 11, 2020) ("Essentially a Copy Guidance"), ECF No. 19-1; and (2) FDA, *Interim Policy on Compounding Using Bulk Drug Substances Under Section 503B of the Federal Food, Drug, and Cosmetic Act, Guidance for Industry* (Jan. 2017), *available at* https://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformatio n/Guidances/UCM469122.pdf (last visited Oct. 12, 2020) ("Interim Policy"), attached as Ex. B to RJN. In another indication that FDA is in the midst of its rulemaking process, on September 10, 2020, just a few days after Nexus filed a preliminary injunction motion in a Related Case, stating: FDA issued a public notice indicating it is currently revising guidance for outsourcing facilities, including the "essentially a copy" guidance when outsourcing facilities compound starting with an approved drug, as is true here. Ex. A to RJN, at 2. FDA stated:

> The agency has received questions and comments related to its policies for applying the "essentially a copy" provision when outsourcing facilities . . . compound drugs starting with an approved drug rather than a bulk drug substance. FDA plans to address these comments in an upcoming revision to its guidance for outsourcing facilities. The agency also intends to address compounding from approved drugs in revisions to its guidance for pharmacy and physician compounders[.]

*See* Ex. A to RJN, 9/10/20 FDA Update, at 2. And, in the same Related Case, the Acting Director of the Division of Compounded Drugs at FDA, Maria Edisa

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Gozun, provided written testimony in a declaration supporting the denial of

2   Nexus's motion for a preliminary injunction.  *See* Ex. C to RJN, Gozun Decl.  FDA

3   certified that it has never taken any compliance or enforcement action—e.g., issued

4   any Warning Letters or untitled letters, or referred actions to the United States

5   Department of Justice to bring in federal court—in which FDA relied on the

6   "essentially a copy" provisions set out in Section 503B with respect to products

7   compounded from an FDA-approved drug product as a starting material, rather than

8   a bulk drug substance.  *See* Ex. C to RJN, Gozun Decl., at ¶ 8.  In addition, FDA

9   attached a letter to the declaration stating that the declaration would be "in the

10   public interest because it would discourage an interpretation of the relevant

11   provisions that could be potentially inconsistent with FDA's interpretation and

12   future enforcement actions."  *See* Ex. C to RJN, 9/28/20 Hendriksson Letter, at 2.

13   FDA also stated: "FDA believes that the requested testimony furthers the objectives

14   of the FDCA and the agency as it relates to an action where a private party seeks to

15   enforce provisions of the FDCA that have not served as the basis for an FDA

16   enforcement action and may require further FDA interpretation."  *Id*.

17   **III.   NEXUS'S ALLEGATIONS**

18       Defendant SCA is an Arkansas entity that owns and operates two Section

19   503B outsourcing facilities: one in Little Rock, Arkansas and the other in Windsor,

20   Connecticut.  9/24/20 First Amend. Compl., ECF No. 19 ("FAC"), ¶¶ 12, 28.  SCA

21   compounds ready-to-use ephedrine sulfate drug products starting from an FDA-

22   approved ephedrine sulfate product that is sold by another drug manufacturer.  *See*

23   FAC ¶¶ 22, 64.  Ephedrine sulfate has been commonly used for decades to treat low

24   blood pressure in patients under anesthesia.  *See id.* ¶¶ 33-34.  Nexus alleges that

25   SCA is registered to do business in California, has shipped its products into

26   California (and into this District), and that SCA marketed its product at the

27   California Society of Health System Pharmacists in California.  *Id*. ¶ 31.  Nexus has

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  alleged no facts about SCA's compounding or manufacturing within California or

2  Florida, nor has it alleged any facts about the volume of SCA's sales to California

3  or Florida residents.

4      Plaintiff Nexus is an Illinois company that manufactures an ephedrine sulfate

5  drug product called EMERPHED™ at a concentration of 5 mg/mL. *Id.* ¶¶ 24-25,

6  36-37. Nexus received FDA approval on April 17, 2020, *id.* ¶ 37, to market

7  "EMERPHED™ for the treatment of clinically important hypotension occurring in

8  the setting of anesthesia." *Id.* ¶ 25. Nexus describes its product as "ready-to-use,"

9  *id.* ¶ 37, but because Nexus's product needs to be drawn into a syringe before use,

10 additional steps are required before Nexus's product can be administered to a

11 patient. *See id.* ¶ 86 (referring to its product as "a *vial* of Nexus's FDA-approved

12 EMERPHED™") (emphasis added).

13     Nexus sued SCA on August 19, 2020. ECF No. 1. On September 24, 2020,

14 Nexus filed its First Amended Complaint, which brings four causes of action

15 against SCA: (1) Violation of California's Unfair Competition Law ("UCL") (Cal.

16 Bus. Prof. Code § 17200, *et. seq*.); (2) Violation of Florida's Deceptive and Unfair

17 Trade Practices Act ("FDUTPA") (Fla. Stat. Ann. § 501.201, *et seq*.); (3) Violation

18 of Arkansas's Unfair Competition Laws (AR Code § 4-88-101 *et seq*.); and (4)

19 Violation of Connecticut's Unfair Trade Practices Act (Conn. Gen. St. § 42-

20 110b). Each claim is premised on SCA's manufacture and sale of its compounded

21 ephedrine sulfate products, which Nexus alleges violate Section 503B.

22     Nexus's causes of action are anchored on allegations setting out two

23 purported "wrongs"—that SCA's products are "essentially a copy" of Nexus's

24 product (EMERPHED™), *see* FAC ¶¶ 63-71, and that SCA's products are

25 compounded from a bulk drug substance that is not listed on the 503B Clinical

26 Need List or on FDA's drug shortage list, *see id.* ¶¶ 72-79. *See, e.g.*, *id.* ¶ 70

27 ("Because SCA Pharma violates the 'Essentially a Copy' prohibition, SCA

28

7

Pharma's compounding and sale of ready-to-use ephedrine sulfate violates 21 U.S.C. § 353b(a)(5)."); *id.* ¶ 79 ("SCA Pharma's bulk compounded ephedrine sulfate product did not qualify for exemption from the approval requirements because it did not comply with the bulk compounding requirements of 21 U.S.C. § 353b(a)(2).").  In describing the specific Section 503B violations at issue (relating to "essentially a copy" and compounding from a bulk drug substance), Nexus cites exclusively to the FDCA and FDA's guidance documents.  *See* FAC ¶¶ 51-52, 54-55, 58-59, 61-62, 66-67, 69-70 (setting out Nexus's allegations regarding "essentially a copy" and collectively citing 21 U.S.C. § 353b(a)-(b), § 353b(a)(5), § 353b(d)(1), § 353b(d)(2), § 353b(d)(2)(B); § 353b(a), § 353b(a)(11), § 353b(a), 21 U.S.C. § 353b(a)(11), but citing no state laws or statutes); *id.* ¶¶ 56-61, 71 (setting out Nexus's allegations regarding "essentially a copy" and citing FDA's "Essentially a Copy Guidance"); *id.* ¶¶ 75, 79 (setting out Nexus's allegations regarding compounding with a bulk drug substance and collectively citing § 353b(a)(2)(A)(i)-(ii) and § 353b(a)(2), but citing no state laws or statutes).

## IV.  **LEGAL STANDARD**

A complaint must be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When deciding Rule 12(b)(6) motions to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," such as "matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted).  A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

A complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'"  *Beckington v.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

8

1   *Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (citing *Ashcroft v. Iqbal*, 556

2   U.S. 662, 679-80 (2009) ("Threadbare recitals of the elements of a cause of action,

3   supported by mere conclusory statements, do not suffice.")).  While courts

4   "accept[] as true a plaintiff's well-pled factual allegations," this Court "is not

5   required to accept as true legal conclusions couched as factual allegations." *Saber*

6   *v. JP Morgan Chase Bank, N.A.*, 2013 WL 12124000, at *1 (C.D. Cal. Oct. 9,

7   2013).  A court need not accept as true allegations contradicted by facts of which it

8   may take judicial notice.  *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

9   **V.   <u>ARGUMENT</u>**

10          Nexus's First Amended Complaint should be dismissed with prejudice on

11   preemption grounds because all four causes of action are anchored on violations of

12   the FDCA.  In the alternative, because the resolution of this case requires FDA's

13   technical expertise, the Court should invoke the primary jurisdiction doctrine and

14   either dismiss or stay the case so FDA can address the technical and policy

15   questions raised by Nexus's allegations, as it is currently in the process of doing.  In

16   addition, Nexus's claims under California and Florida law cannot proceed in this

17   context—by a non-resident against a non-resident—because Nexus failed to allege

18   the type of in-state facts sufficient to allow extraterritorial application of those

19   statutes.

20          **A.   <u>Nexus's Causes of Action Must Be Dismissed With Prejudice On</u>**
21          **<u>Preemption Grounds Because They Depend On the FDCA</u>**

22          All four causes of action are predicated on SCA's alleged violations under

23   the FDCA.  To circumvent the FDCA's intentional lack of a private right of action,

24   Nexus frames the dispute in state law causes of action.  But the specific wrongdoing

25   Nexus alleges is rooted squarely in FDCA violations.  *See* FAC ¶¶ 51-71 (Nexus's

26   allegations regarding "essentially a copy"; citing only FDCA statute provisions and

27   FDA's Essentially a Copy Guidance); *id.* ¶¶ 72-79 (Nexus's allegations regarding

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

9

1  compounding with a bulk drug substance; citing only FDCA statute provisions,

2  FDA guidance documents, FDA lists, and FDA federal register publications). As

3  such, Nexus's causes of action are preempted.

4  The touchstone of any preemption inquiry is Congress's purpose. *See Retail*

5  *Clerks Int'l Ass'n, Local 1625, AFL-CIO, v. Schermerhorn*, 375 U.S. 96, 103

6  (1963). The DQSA was enacted in relevant part to solve problems exacerbated by

7  patchwork state laws for compounding. *See* Ex. D to RJN, 159 Cong. Rec. S8072

8  (statement of Sen. Alexander, co-sponsor) ("[T]he Drug Quality and Security Act

9  establishes a completely separate and distinct section 503B that authorizes FDA to

10  regulate an optional category for larger compounding facilities. Sterile

11  compounding facilities that do not want to comply with the patchwork of State laws

12  and requirements can choose instead to have FDA regulate their compounding.");

13  *see* Ex. E to RJN, 159 Cong. Rec. H5961 (statement of Rep. Waxman, co-sponsor)

14  ("Divergent court decisions on the underlying statute had forced the agency to

15  cobble together a piecemeal approach to regulating compounding pharmacies that

16  was different in some parts of the country than in others. That untenable legal

17  situation created loopholes" that Section 503B closes.). Congress's devotion to a

18  uniform standard for Section 503B compounders signals its intent that conduct

19  unlawful because it violates the FDCA be the sole province of FDA.

20  Congress directed that "all [] proceedings for the enforcement, or to restrain

21  violations, of [the FDCA] shall be by and in the name of the United States." 21

22  U.S.C. § 337(a). Section 337(a) "implicitly preempts any private right of action to

23  enforce the FDCA." *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 772

24  (C.D. Cal. 2019), *appeal dismissed*, 2020 WL 4877519 (9th Cir. May 13, 2020).

25  "[C]itizens may petition the FDA to take administrative action," but "private

26  enforcement of the statute is barred." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109,

27  1119 (9th Cir. 2013) (citing 21 U.S.C. § 337(a)). "'[T]he right to enforce the

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

provisions of the FDCA lies exclusively within the federal governments' domain, by way of either the FDA or the Department of Justice."  *Goldsmith v. Allergan, Inc.*, 2011 WL 147714, at *2 (C.D. Cal. Jan. 13, 2011) (citation omitted).  This prohibits a plaintiff not only from expressly seeking to enforce the FDCA, but also from using "'state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA.'"  *Id.* (citation omitted).

The FDCA preemption test is prescribed by the U.S. Supreme Court in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350, (2001), and well settled in the Ninth Circuit:  in order to escape preemption by the FDCA, "'[t]he plaintiff must be suing for conduct that violates the FDCA . . . , but the plaintiff must not be suing *because* the conduct violates the FDCA.'"  *Perez*, 711 F.3d at 1120 (emphasis added) (citing *Buckman Co.*, 531 U.S. at 350); *accord Borchenko*, 389 F. Supp. 3d at 772.  The linchpins of Nexus's claims are that SCA's conduct is unlawful because it violates the FDCA's "essentially a copy" provisions and the FDCA's provisions regulating compounding from bulk drug substances.  Inescapably, Nexus is suing *because* the conduct allegedly violates the FDCA.  Its claims are, therefore, impliedly preempted and must be dismissed.  *See Perez*, 711 F.3d at 1120 (applying *Buckman*, 531 U.S. at 350); *Borchenko*, 389 F. Supp. 3d at 774.

Nexus's complaint tells us all we need to know in this regard.  The allegations that specifically identify SCA's alleged misconduct squarely rely on FDCA provisions and FDA guidance.  Nexus's pleading is devoid of any citation to state law provisions that prohibit or even reference (1) "essentially a copy" or (2) compounding from a bulk drug substance, which are the two offenses that Nexus has alleged against SCA and which Nexus asserts are creatures of the FDCA and FDA's own rulemaking and guidance documents.  For example, see:

- FAC ¶¶ 51-52, 54-55, 58-59, 61-62, 66-67, 69-70 (setting out Nexus's allegations regarding "essentially a copy" and collectively citing 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

U.S.C. § 353b(a)-(b), § 353b(a)(5), § 353b(d)(1), § 353b(d)(2), § 353b(d)(2)(B); § 353b(a), § 353b(a)(11), § 353b(a), 21 U.S.C. § 353b(a)(11), but citing no state laws or statutes).

- FAC ¶¶ 56-61, 71 (setting out Nexus's allegations regarding "essentially a copy" and collectively citing FDA's Essentially a Copy Guidance, but citing no state laws or statutes).

- FAC ¶¶ 75, 79 (setting out Nexus's allegations regarding compounding with a bulk drug substance and collectively citing § 353b(a)(2)(A)(i)-(ii) and § 353b(a)(2), but citing no state laws or statutes).

In Nexus's primary factual allegations setting forth SCA's purported misconduct, not a single paragraph cites or relies on a state law or statute.  *See* FAC ¶¶ 49-79. There is no denying that Nexus's complaint alleges SCA is liable "because of" FDCA violations.  For example, see:

- FAC ¶ 68 ("***Because*** SCA Pharma's compounded ready-to-use ephedrine sulfate drug product sold from its 503B outsourcing facilities is identical or nearly identical to Nexus's FDA-approved EMERPHED™ drug product, and Nexus's product does not appear on the FDA drug shortage list, SCA Pharma's products are essentially a copy of an approved product and violate the requirements for exemption from drug approval in Section 503B.") (emphasis added);

- *Id.* ¶ 70 ("***Because*** SCA Pharm violates the 'Essentially a Copy' prohibition, SCA Pharma's compounding and sale of ready-to-use ephedrine sulfate violates 21 U.S.C. § 353b(a)(5).") (emphasis added); and

- *Id.* ¶ 79 ("SCA Pharma's bulk compounded ephedrine sulfate product did not qualify for exemption from the [FDCA Section 505] approval requirements ***because*** it did not comply with the bulk compounding requirements of 21 U.S.C. § 353b(a)(2).") (emphasis added).

As the face of the First Amended Complaint demonstrates, Nexus has asked the Court to step into FDA's shoes and interpret and enforce the FDCA through the lens of state-law claims.  This is exactly the circumstance when state law claims are preempted by the FDCA—when the claims are alleged *because of* FDCA violations.  *Borchenko*, 389 F. Supp. 3d at 772 (quoting *Perez*, 711 F.3d at 1120).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Because Nexus's claims "exist solely by virtue of [] FDCA" requirements, they are

2   preempted.  *Buckman Co.*, 531 U.S. at 352-53.

3        In a 2017 case in this District, Judge Carter decided whether a private litigant

4   may enforce the "essentially a copy" provisions of Section 503B: ***the answer was***

5   ***no*** because the FDCA preempts such a claim.  Simply put, "alleged violation[s] of

6   Section 503A and 503B's 'essentially a copy' rule are precluded [by the FDCA]

7   because the rule implicates various exceptions that 'directly implicate the FDA's

8   rulemaking authority.'"  *Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2017 WL

9   10526121, at *8 n.1 (C.D. Cal. Nov. 14, 2017) ("*Imprimis I*") (citation omitted).  In

10  *Imprimis I*, Judge Carter considered whether plaintiff's Lanham Act claim could go

11  forward when the conduct at issue was predicated on violations of the FDCA, or

12  whether such claims would be preempted.  *Id.*  Judge Carter observed that "the

13  preclusion question turns on the specific nature of the claim in question—only

14  claims where the law is unclear and the FDA's particular expertise or rulemaking

15  authority is required are precluded by the FDCA."  *Id.* at *7.  Judge Carter went on

16  to find that certain of the litigant's conduct violated the plain text of the FDCA and

17  as to *that* conduct, the court could make a "simple factual determination" (there, the

18  "binary determination" of whether or not a substance appeared on an interim list) to

19  decide whether the litigant complied with the FDCA and in turn, complied with the

20  Lanham Act.  *Id.* at *8.  But as to the litigant's alleged misconduct premised on

21  compounding a drug product that was "essentially a copy" under Sections 503A

22  and 503B, Judge Carter held that the FDCA preempted such a claim:

23       [Defendant's] alleged violation of Section 503A and 503B's
         "essentially a copy" rule are precluded because the rule implicates
24       various exceptions that "directly implicate the FDA's rulemaking
         authority." … The fact that Section 503B defines the term "essentially
25       a copy" does not change the analysis, because the statutory definition
         is rife with exceptions that the FDA must first determine.
26
27  *Imprimis I*, at *8 n.1 (quoting *JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d

28  992, 999 (C.D. Cal. 2014)) (citing 21 U.S.C § 353b(d)).  Likewise, Nexus's

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

complaint alleges violations of Section 503B's "essentially a copy" provision, which, if the claims were not dismissed, would require the Court to compare Nexus's FDA-branded ephedrine sulfate product with SCA's compounded ephedrine sulfate product to decide issues that directly implicate FDA's rulemaking authority. Congress instructed FDA to enforce the FDCA, not private litigants. The "essentially a copy" rule "directly implicate[s] FDA's rulemaking authority" and is full of issues "that the FDA must first determine." *Imprimis I*, at *8 n.1; *JHP Pharms.*, 52 F. Supp. 3d at 1004. Because Nexus's claims turn on decisions Congress intended FDA to decide and enforce, the claims are preempted. *Id.*

Judge Carter's later decision on a motion to dismiss counterclaims is also informative. The state unfair competition claims were preempted by the FDCA because they "require[d] the Court to make complex findings" on issues that "directly implicate[d] the FDA's authority to make complex policy determinations." *See Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2018 WL 5919210, at *8 (C.D. Cal. Apr. 30, 2018) ("*Imprimis II*") ("To proceed on this claim without a clear statement by the FDA… would be to arrogate the authority of the FDA to decide, at least in the first instance, the legality or illegality of marketing a particular substance."). Judge Carter found that absent "a clear statement" from FDA that counter-plaintiff is "breaking the law," the Court would need to "make findings squarely within the FDA's authority" and thus, the claims were preempted. *Id.*

Other courts have likewise preempted UCL and other tort-based claims that are predicated on FDCA violations, particularly where, as here, FDA had not found the FDCA was violated. *See, e.g.*, *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) ("a private action brought under the Lanham Act may not be pursued when [] the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was

14

such a violation"); *JHP Pharms.*, 52 F. Supp. 3d at 1004 (FDCA preempted part of a Lanham Act claim that required "determination of whether a drug [was] 'new,' and whether it [could] be lawfully marketed under the FDCA" because it involved complex matters Congress delegated exclusively to the FDA).

Nexus will rely on an interlocutory decision in *Hope Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*, 2020 WL 3803029 (C.D. Cal. Jul. 7, 2020), in which Judge Snyder granted a narrowly-tailored preliminary injunction against a Section 503B compounder in the context of that compounder's alleged failure to keep a record of attestation forms from the medical providers requesting the product. *See id.* at *22. In ruling that the plaintiff showed a likelihood of success on the merits (which was an interlocutory decision, not a ruling on the merits), Judge Snyder found that the FDCA's lack of a private right of action would not bar the plaintiff's state law claims "where there is a parallel state law that renders the same noncompliant conduct independently unlawful." *Id.* at *13 (citation omitted). Here, however, Nexus has not cited any state law for its allegations that SCA violates the "essentially a copy" provision or its allegations that SCA is improperly compounding from a bulk drug substance, *see* FAC ¶¶ 49-79, such that the Court could determine whether there is a parallel state law on all fours. And, the *Hope Medical* decision focused heavily on the factual, binary determination of whether the attestations and order forms that defendant relied on to overcome the "essentially a copy" allegations were in place (ultimately finding they were not). *See Hope Medical*, 2020 WL 3803029, at *10-11. Whether or not attestations and order forms were properly obtained did not "directly implicate the FDA's rulemaking authority" as a substantive comparison of one drug to the other would. *See Imprimis I*, at *8 n.1; *JHP Pharms.*, 52 F. Supp. 3d at 1004. Furthermore, the parties in *Hope Medical* did not comprehensively brief or argue the preemption issue and thus, it appears Judge Snyder may not have been

15

presented with all relevant case law.[3]  In sum, *Hope Medical* is not a final merits ruling, is not binding precedent, did not address the binding Supreme Court and Ninth Circuit case law on FDCA preemption, and dealt with the binary issue of whether documentation existed as opposed to the technical- and judgment-laden issue of comparing drug products to evaluate whether they are nearly identical.  It does not salvage Nexus's claims.

In some circumstances, certain state law claims that relate to the FDCA may proceed when the state law is "precisely parallel to the duties imposed by federal law."  *Funke v. Sorin Group USA, Inc*., 147 F. Supp. 3d 1017, 1024 (C.D. Cal. 2015) (Carney, J.) (quoting *Stengel v. Medtronic Inc*., 704 F.3d 1224, 1234 (9th Cir. 2013) (en banc) (concurrence)).  But state claims are not parallel to federal law when they impose requirements that are "different from, or in addition to federal requirements."  *Id*.  Here, Nexus alleges that state law prohibits SCA from compounding and selling its compounded drug products because such products are not approved by FDA or by a state agency.  FAC ¶¶ 90-94 (California); *id*. 100-108 (Florida); *id*. ¶¶ 111-113 (Arkansas); *id*. ¶¶ 120-121 (Connecticut); *id*. 38-48 (all four state laws).  Yet at the same time, Nexus acknowledges, as it must, that federal law provides a framework through which outsourcing facilities may compound and sell drug products that have not gone through FDA's New Drug Approval process.  *See id*. ¶ 51 ("SCA Pharma purports to avoid the need for compliance with 21

---

[3] Moreover, preliminary injunction orders are not final decisions on the merits; they apply a lower standard (asking only if the litigant has shown a "*likelihood* of success" or raised a "serious *question* on the merits") and are thus of questionable precedential value.  *See FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 74 (D.D.C. 2015) (noting "the findings and conclusions in the Court's preliminary-injunction order may not have precedential value as to the ultimate merits of FBME's claims"); *Fund For Animals v. Mainella*, 335 F. Supp. 2d 19, 27 (D.D.C. 2004) ("in assessing their likelihood of success on the merits[,]…any weight a court would subsequently give…would be based on the procedural context" only); *Martin v. Texaco, Inc.*, 602 F. Supp. 60, 62-63 (N.D. Fla. 1985) (preliminary injunction order "was not a decision on the merits and so has no precedential value").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

16

U.S.C. § 355(a) pre-market approval by relying on Section 503B of the FDCA"). Nexus fails to allege that a parallel framework for compounders exists in the state laws it asserts SCA violates. Thus, Nexus's alleged state law claims are *not* parallel to the federal requirements. *See, e.g.*, *Funke*, 147 F. Supp. 3d at 1024.

If Nexus's claim were to be allowed and were to succeed, Nexus will have brought about the disuniformity the DQSA sought to eliminate— a scenario where SCA can sell its compounded products in certain states but not others and the lawfulness of federally regulated compounding activity varies state to state. This is exactly the type of "piecemeal" and "patchwork" application of law that the DQSA is intended to rectify. *See supra*, at 4, 10.

### B.   Nexus's Claims Fall Squarely Within FDA's Primary Jurisdiction and the Court Should Dismiss Them or Stay the Case

Nexus's claims are preempted by the FDCA and should be dismissed with prejudice. However, in the alternative, the claims are within FDA's primary jurisdiction—they would have the Court decide matters of first impression that implicate FDA's technical expertise—and the case should either be dismissed or stayed on that basis.

Primary jurisdiction is a "prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc*., 307 F.3d 775, 780 (9th Cir. 2002). Under the primary jurisdiction doctrine, a district court may dismiss the case or stay proceedings to allow the relevant agency to address the issue first. *See Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 760-61 (9th Cir. 2015). Courts apply the doctrine when "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch."

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Courts consider

2   the following factors when deciding to apply the doctrine: "(1) the need to resolve

3   an issue that (2) has been placed by Congress within the jurisdiction of an

4   administrative body having regulatory authority (3) pursuant to a statute that

5   subjects an industry or activity to a comprehensive regulatory authority that (4)

6   requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

7        Here, all four factors are readily met so the Court should dismiss or stay the

8   case under the primary jurisdiction doctrine.  ***First***, the resolution of some of

9   Nexus's claims requires the Court to decide whether SCA's compounded products

10  fall inside or outside the FDCA's "essentially a copy" provision, as interpreted by

11  FDA in a guidance document.  *See* FAC ¶¶ 51-70 (alleging SCA violates the

12  "essentially a copy" provision in 21 U.S.C. § 353b and in the FDA's Essentially a

13  Copy Guidance document).  The resolution of Nexus's other claims require the

14  Court to decide whether SCA's products compounded from a bulk substance are

15  lawful or unlawful under the multiple steps in the Interim Policy.  *Id.* ¶¶ 72-79

16  (alleging SCA violates the FDCA's provisions on bulk compounding, which will

17  turn on an interpretation of FDA's Interim Policy).  Both issues are for FDA to

18  decide in the first instance, and ultimately for FDA to enforce.  ***Second***, Nexus's

19  complaint—though it invokes violations of state consumer protection statutes—

20  ultimately turns on an interpretation of the FDCA, which Congress has explicitly

21  placed within the jurisdiction of FDA, a regulatory agency that has rulemaking

22  authority.  *See* 21 U.S.C. § 337(a) (all enforcement of FDCA violations "shall be by

23  and in the name of the United States").  Through the text of Section 503B, which is

24  chock-full of references to Federal Register notices, and other FDA rulemaking

25  responsibilities, Congress charged FDA with the duty to make rules and regulate

26  Section 503B compounding.  *See generally* 21 U.S.C. § 353b (stating, for example,

27  that a drug "appears on a list established by the Secretary"; the FDA must

28

18

"publish[] a notice in the Federal Register" and seeking comments on same; the drug "appears on the drug shortage list" maintained by FDA; the drug is not identified on "a list published by the Secretary"; the "Secretary shall make available on the public Internet Web site" of FDA a list of each registered outsourcing facility; each facility must "submit to the Secretary a report," and more).

*Third* and *fourth*, in enacting the DQSA, Congress intended to ensure uniformity in the regulation of Section 503B compounding and placed such regulation within FDA's exclusive jurisdiction. *See, e.g.*, Ex. E to RJN, 159 Cong. Rec. H5961 (statement of Rep. Waxman, co-sponsor) (prior to Section 503B, FDA was forced to "cobble together a piecemeal approach to regulating compounding pharmacies"); Ex. D to RJN, 159 Cong. Rec. S8072 (statement of Sen. Alexander, co-sponsor) (Section 503B is a new alternative to the legacy "patchwork of State laws and requirements"). Section 503B (and the FDCA as a whole) is a comprehensive regulatory framework that Congress decided would have no private right of action. 21 U.S.C. § 337(a). Administering this complex regulatory regime requires FDA's expertise to ensure uniformity in the industry.

FDA agrees. In a Related Case that Nexus lodged in this Court, FDA wrote a letter and issued a declaration stating that the issue "may require further FDA interpretation" and discouraging the Court from rendering an interpretation of "essentially a copy" that could be "inconsistent with FDA's interpretation and future enforcement actions." *See* Ex. C to RJN, Gozun Decl. FDA stated:

> FDA believes that the requested testimony furthers the objectives of the FDCA and the agency as it relates to an action where a private party seeks to enforce provisions of the FDCA that have not served as the basis for an FDA enforcement action and may require further FDA interpretation. The agency has publicly announced that it is planning to address questions and comments related to its policies for applying the "essentially a copy" provisions when outsourcing facilities compound drugs starting with FDA-approved drug products in a forthcoming revision to its guidance for outsourcing facilities. Accordingly, FDA believes that the requested testimony is in the public interest because it

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2

would discourage an *interpretation of the relevant provisions that could be potentially inconsistent with FDA's interpretation and future enforcement actions*.

3

Ex. C to RJN, 9/28/20 Hendriksson Letter, at 2 (emphasis added).

4

And, whether SCA's ephedrine products compounded from FDA-approved

5

product violate the FDCA's essentially a copy provision is "an issue of first

6

impression." *Clark*, 523 F.3d at 1114; *see* Ex. C to RJN, Gozun Decl., at ¶ 8 (FDA

7

stating under penalty of perjury that "FDA has not taken any compliance or

8

enforcement action (e.g., issued any Warning Letters or untitled letters, or referred

9

actions to the United States Department of Justice to bring in federal court) in

10

which FDA relied on the 'essentially a copy' provisions set forth in Section 503B

11

of the FDCA with respect to outsourcing facilities that compound drug products

12

using FDA-approved drug products—rather than bulk drug substances—as a

13

starting point."). FDA's guidance on "essentially a copy" when starting from an

14

FDA-approved drug substance is still under construction. *See* Ex. A to RJN,

15

9/10/20 FDA Update, at 2; Ex. C to RJN, Gozun Decl., at ¶ 9. Likewise, FDA is in

16

the midst of deciding whether a Section 503B compounder, like SCA, may

17

compound ephedrine sulfate from a bulk drug substance. The Court can take

18

judicial notice of FDA's *proposed rule* indicating its intent to exclude ephedrine

19

sulfate from the clinical need list and *soliciting notice and comment* on that rule.[4]

20

*See* Ex. F to RJN, 84 Fed. Reg. 46,014 (Sept. 3, 2019). FDA is still in its

21

decisionmaking stage on this issue, which is a "responsibility [that] should be

22

performed by the relevant agency rather than the courts." *Syntek*, 307 F.3d at 780.

23

---

24

[4] Nexus falsely alleges in its complaint that "FDA considered the nomination of ephedrine sulfate and decided not to add it to the 503B Bulks List." FAC ¶ 77. The truth is that FDA has not made such a determination. It has issued a proposed rule recommending that ephedrine sulfate not be on the list and soliciting comments from the industry, Ex. F to RJN (84 Fed. Reg. 46,014), which are still under consideration. FDA's final rule has not yet been issued and until it is, FDA's Interim Policy governs the question of whether SCA may compound from a bulk substance. *See* Ex. B to RJN, Interim Policy.

25

26

27

28

1   Because the questions of whether SCA's products comply with Section

2   503B's "essentially a copy" provision and whether SCA may compound ephedrine

3   sulfate from a bulk drug substance are "particularly complicated issue[s] that

4   Congress has committed to a regulatory agency," Nexus's case should be dismissed

5   (or stayed) under the primary jurisdiction doctrine. *Clark*, 523 F.3d at 1114

6   (citation and internal quotation marks omitted); *see also Imprimis I*, at *8 n.1

7   (observing in the context of a preemption analysis that Section 503B's "essentially

8   a copy"' rule "directly implicate[s] the FDA's rulemaking authority").

9   **C.    Nexus's California Claim Fails Because The UCL Does Not Apply**

10   **Extraterritorially**

11   In order for a non-California resident, like Nexus, to bring a UCL claim, it

12   must overcome California's presumption against extraterritorial application of the

13   UCL.  Nexus's allegations do no such thing, and its UCL claim must be dismissed.

14   "[A] California statute presumptively does not apply beyond state boundaries,

15   'unless a contrary intention is clearly expressed or reasonably can be inferred from

16   the language or purpose of the statute.'"  *Webb v. Carter's, Inc.*, 2009 WL

17   10670244, at *4 (C.D. Cal. June 23, 2009) (citing *Norwest Mortg. Inc. v. Sup. Ct.*,

18   72 Cal. App. 4th 214, 222 (1999)).  This presumption is "one against an intent to

19   encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and

20   remedies of a domestic statute.'"  *Id.* (emphasis in original) (citing *Diamond*

21   *Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal.4th 1036, 1060 n.20 (1999)).  The UCL

22   "contains no express declaration that it was designed or intended to regulate claims

23   of non-residents arising from conduct occurring entirely outside of California."  *Id.*

24   The UCL cannot be enforced by Nexus, a non-California resident, against

25   SCA, also a non-California resident, when none of the alleged misconduct or

26   injuries occurred in California.  SCA is located in Arkansas and Connecticut, FAC

27   ¶ 12, where it manufactures its ephedrine sulfate products.  Nexus has alleged no

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

facts about SCA's sales to California residents.  And any alleged harm to Nexus is felt by Nexus outside of California.  *Id.* ¶ 24 (Nexus is an Illinois company with its principal place of business in Illinois).

Nexus fails to allege any of the purported misconduct featured in its complaint occurred in California, as it must in order to sustain a UCL claim here. Such allegations would be impossible, given that this is a complaint rooted in compounding and SCA compounds its products in Arkansas and Connecticut.  *Id.* ¶ 63.  The extent of Nexus's alleged California-based facts are as follows: SCA "is registered to do business in California," SCA "has designated an agent for service of process in California," SCA has been "engaging in business in this District and shipping unapproved drugs in to California and this District," SCA is "registered with the California Board of Pharmacy," "SCA exhibited at" and "marketed its ready to use ephedrine sulfate product" at the California Society of Health System Pharmacists in California, and SCA "advertises and sells" its ephedrine sulfate products "throughout California."  *Id.* ¶¶ 29, 31.  These allegations may be "sufficient to support the exercise of specific personal jurisdiction over [SCA] in an appropriate case," but they are "insufficient to permit nonresident plaintiffs [like Nexus] to sue for conduct occurring outside the state."  *Webb*, 2009 WL 10670244, at *5 (dismissing UCL claim against non-resident defendant because allegations that defendant maintained distribution and warehousing facilities in California and that defendant's products entered the U.S. primarily through ports in California did "not establish a sufficient nexus between California and the specific conduct at issue in this case").

Even if SCA's decisions regarding marketing or sales were the alleged misconduct here, instead of SCA's compounding, Nexus has failed to allege that such marketing decisions were made or originated in California (and with good reason—they would have been made in Arkansas or Connecticut, where SCA is

based).  *See Webb*, 2009 WL 10670244, at *5 (plaintiff failed to allege any decision by the non-resident defendant regarding marketing misconduct was reached by the defendant's executives in its California facilities); *see also In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011) (dismissing non-resident plaintiffs' UCL claim because plaintiffs' allegation that deceptive marketing was "in part" made in California was insufficient to allege a California "point of dissemination [for] advertising and promotional literature").

In addition, Nexus has failed to allege a UCL injury would be felt in California.  FAC ¶ 96 (alleging the conclusion that Nexus has lost sales but failing to assert it suffered any injury specifically felt in California, which would be difficult to allege, given Nexus's Illinois residence).  That SCA sells its ephedrine sulfate products into California is not enough to resurrect Nexus's UCL claim because "in-state sales alone cannot properly be considered sufficient to establish a nexus with California."  *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000).  And, Nexus's conclusory allegations about harm to California consumers, FAC ¶ 95, are likewise insufficient because Nexus cannot rely on purported injuries of third parties in support of its UCL claim.  *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (citing *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 788 (2010)) (UCL standing is confined to those who are "actually injured by a defendant's unlawful business practice").  Rather, Nexus must allege its *own* injuries in California and establish it has "*personally* suffered such harm."  *Obesity Research Inst.*, 165 F. Supp. 3d at 947 (emphasis added).  As in *Webb*, Nexus cannot maintain a sufficient connection with California to justify its UCL claim.  Nexus has chosen to lodge its multiple complaints against Section 503B compounders in this California court, alleging UCL violations, likely because of decisions in this court relating to compounding violations.  But the unavoidable facts reveal that non-resident

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Nexus's allegations against non-resident SCA and its out-of-state compounding are

2  inadequate to sustain a UCL claim.  Nexus has not alleged that the compounding

3  conduct of which it complains occurred in California or that it was injured in

4  California—nor could it.  The UCL claim collapses for failure to allege requisite

5  California connections.

6       **D.**     **Nexus's Florida Claim Fails Because the FDUTPA Does Not Apply**

7           **Extraterritorially**

8       Likewise, Nexus's claim under Florida law must be dismissed because the

9  FDUTPA cannot apply to non-Florida residents such as SCA (and Nexus, for that

10  matter) unless the "offending conduct took place *predominantly or entirely* in

11  Florida." *Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at *9 (S.D. Fla. May 18,

12  2016) (citations and internal quotation marks omitted) (emphasis added).  Nexus

13  fails this test.  The lone allegation tying SCA to Florida is the contention that SCA

14  advertises and sells its ephedrine sulfate products in Florida, *see, e.g.*, FAC ¶¶ 10,

15  29, which is a far cry from facts showing that the offending conduct was

16  "predominantly or entirely in Florida."  Moreover, Nexus's complaint centers on

17  SCA's alleged unlawful *compounding*—not misconduct in advertising or sales—

18  but SCA's compounding takes place in its Arkansas and Connecticut outsourcing

19  facilities.  *Id.* ¶ 63.  Nexus pleads no facts (nor could it) that show SCA's

20  compounding occurred in Florida.  Even accepting all allegations as true, there is no

21  reading of them that would support an inference that the alleged "offending

22  conduct" was located "predominantly or entirely" in Florida.  *Bank of Am.*, 2015

23  WL 2897410, at *9.

24       Furthermore, Nexus asserts that "[i]n *substantial* part, Nexus's claims arise

25  out of or relate to SCA Pharma's activities in this District[, that is, the Central

26  District of California]."  FAC ¶ 31 (emphasis added).  Accepting this as true for

27  purposes of this Motion, the misconduct at issue in this case is "substantially"

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT SCA PHARMACEUTICALS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO.: 2:20-CV-07520- CJC-JDE

located in California, not Florida.  Even if Nexus had alleged SCA's conduct took place predominantly or entirely in Florida (it did not so allege), Nexus may not allege one fact to avail itself of the FDUTPA and a contrary fact to avail itself of a California venue.  *See, e.g.*, *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 193 (D. Colo. 2018) (dismissing FDUTPA claim with prejudice when plaintiff alleged "for purposes of establishing venue" that the events at issue in the case "substantially occurred in Colorado"; holding that "claims can 'substantially' occur only in one place" and that place was not Florida). Nexus's FDUTPA cause of action lacks the allegations required to sustain it.  It is alleged as an afterthought, intended to procure as broad an injunction as possible, and it should be dismissed out of hand.

## VI.   <u>CONCLUSION</u>

For all these reasons, SCA requests that this Court dismiss Nexus's First Amended Complaint without leave to amend.  Alternatively, SCA requests that this Court invoke the primary jurisdiction doctrine and dismiss the case without prejudice or enter a stay while FDA continues its rulemaking.

Dated:  October 15, 2020            **BAKER & HOSTETLER LLP**

By:   <u>*/s/ Bridget S. McCabe*</u>
          Thomas E. Hogan (*pro hac vice*)
          Bridget S. McCabe
          Dyanne J. Cho

*Attorneys for Defendant*
SCA PHARMACEUTICALS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES